United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN K. YOUNG,

           Petitioner,

    v.

W. L. MONTGOMERY,

           Respondent.

Case No.  15-cv-04780-SI

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Brian K. Young filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254. The court issued an order to show cause why the writ should not be granted. Respondent has filed an answer and Young has filed a traverse. For the reasons discussed below, the petition will be DENIED.

## BACKGROUND

Brian K. Young challenges his convictions arising from an incident when he and a fellow passenger in one car shot at occupants in another car travelling on a freeway. The California Court of Appeal used Young's description of the facts of the crime, and made no determination as to the facts of the offenses because the legal claims asserted on appeal did not require analysis of the evidence presented at trial.

> On the evening of April 3, 2008, a tragedy unfolded on westbound Interstate 80 in Contra Costa County.... [¶] Two cars were traveling westbound. A Dodge being driven by Tiana Sheppard had her boyfriend Aaron Myers in the front passenger seat and their friend [defendant] in the right rear seat. A Pontiac was being driven by Rhonda White, who was the godmother of Ms. Sheppard's child and a close friend of Mr. Myers and [defendant]. Also in Ms. White's car were Donnaray Allison, Sean Wydermyer, Christopher Robinson, and Ashley Davis, all of whom

1
2
3
4

knew Ms. Sheppard, Mr. Myers, and [defendant]. [¶] Ms. White's Pontiac was behind and to the left of the Dodge, when Ms. White recognized her friends in the Dodge. Ms. White sped up to overtake the Dodge, and Ms. White and Mr. Allison signaled to the people in the Dodge. Multiple shots from two weapons were fired from the Dodge into the Pontiac, which shots shattered the driver's side windows of the Dodge and passenger side windows of the Pontiac. Ms. White was killed, and Mr. Allison—who was in the front right of Ms. White's car—was wounded.

*People v. Young*, No. A134248, 2014 WL 1270417, at *1 (Cal. Ct. App. Mar. 28, 2014), as modified on denial of reh'g (Apr. 24, 2014).

Following a jury trial in Contra Costa County Superior Court, Young was found guilty of second-degree murder and shooting at an occupied motor vehicle.  *See* Cal. Penal Code §§ 187, 246.[1]  The jury found the following allegations to be true for the murder:  (1) in the commission of the offense, Young "personally used a firearm," *see* Cal. Penal Code § 12022.5(a) and § 12022.53(b); (2) in the commission of the offense, Young "personally and intentionally discharged a firearm," *see id.* at § 12022.53(c); (3) in the commission of the offense, Young "personally and intentionally discharged a firearm and caused great bodily injury or death to Rhonda White, a person other than an accomplice," *see id.* at § 12022.53(d); and (4) "[t]he killing of Rhonda White was perpetrated by means of shooting a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict great bodily injury," *see id.* at § 190(d).  CT 434-38.  The jury found the following allegations to be true for the offense of shooting at an occupied motor vehicle:  (1) in the commission of the offense, Young "personally and intentionally discharged a firearm and caused great bodily injury or death to Rhonda White, a person other than an accomplice," *see* Cal. Penal Code § 12022.53(d); and (2) in the commission of the offense, Young "personally and intentionally discharged a firearm and caused great bodily injury to Donnaray Allison, a person other than an accomplice," *see id.* at § 12022.53(d).  CT 439-40.  The trial court sentenced Young to a total term of 73 years to life in prison.

Young appealed.  The California Court of Appeal affirmed his conviction, but remanded on a sentencing error not relevant to his federal habeas claims.  (According to Young, his current

---

[1] California Penal Code § 246 provides:  "Any person who shall maliciously and willfully discharge a firearm at an . . . occupied motor vehicle . . . is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year."

United States District Court
Northern District of California

1   sentence is 55 years to life in prison.  Docket No. 1 at 1.)  The California Supreme Court denied

2   his petition for review.  Young also filed unsuccessful state habeas petitions.

3        Young then filed this action.  In his federal petition for writ of habeas corpus, Young

4   alleges the following claims:  (1) the trial court's failure to properly instruct on involuntary

5   manslaughter violated Young's Sixth and Fourteenth Amendment rights to due process and a jury

6   trial; (2) Young's Sixth and Fourteenth Amendment rights to due process and a jury trial were

7   violated because the jury instructions on aiding and abetting were misleading; (3) Young's Sixth

8   and Fourteenth Amendment rights to due process and a jury trial were violated by the modified

9   CALCRIM 402 jury instruction given; (4) Young's Fifth and Fourteenth Amendment rights to be

10  free from double jeopardy were violated when he "was punished for second degree murder,

11  shooting at a motor vehicl[e], and intentionally discharging a firearm," in spite of his acquittal of

12  first-degree murder, Docket No. 1 at 6; and (5) Young's Sixth and Fourteenth Amendment rights

13  to effective assistance of appellate counsel were violated when appellate counsel failed to raise

14  double jeopardy and collateral estoppel arguments on appeal.

15

16                              **JURISDICTION AND VENUE**

17       This court has subject matter jurisdiction over this action for a writ of habeas corpus under

18  28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition

19  concerns the conviction and sentence of a person convicted in Contra Costa County, California,

20  which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

21

22                                  **LEGAL STANDARD**

23       This court may entertain a petition for writ of habeas corpus "in behalf of a person in

24  custody pursuant to the judgment of a State court only on the ground that he is in custody in

25  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

26       The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254

27  to impose new restrictions on federal habeas review.  A petition may not be granted with respect to

28  any claim that was adjudicated on the merits in state court unless the state court's adjudication of

                                              3

the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'"  *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst*, 501 U.S. at 803.  The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016).  Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default and applies to decisions on the merits.  *Barker*, 423 F.3d at 1092 n.3.  In other words, when the last reasoned decision is a decision on the merits, the habeas court can look through later summary denials to apply § 2254(d) to the last reasoned decision.

United States District Court
Northern District of California

1    Section 2254(d) generally applies to unexplained as well as reasoned decisions. "When a

2    federal claim has been presented to a state court and the state court has denied relief, it may be

3    presumed that the state court adjudicated the claim on the merits in the absence of any indication

4    or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

5    When the state court has denied a federal constitutional claim on the merits without explanation,

6    the federal habeas court "must determine what arguments or theories supported or . . . could have

7    supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

8    could disagree that those arguments or theories are inconsistent with the holding in a prior

9    decision of [the U.S. Supreme] Court." *Id.* at 102.

10

11                                    **DISCUSSION**

12   A.    <u>Failure To Instruct on Involuntary Manslaughter Based On Assaultive Felony</u>.

13   Young argues that his right to due process was violated when the trial court failed to

14   instruct *sua sponte* on a particular theory of involuntary manslaughter. Although the jury was

15   instructed on involuntary manslaughter generally (*see* CT 389-390), Young contends that the jury

16   also should have been instructed that a killing without malice in the course of an assaultive felony

17   can be involuntary manslaughter.

18   In *People v. Bryant*, 56 Cal. 4th 959 (Cal. 2013), the California Supreme Court had

19   determined that a killing committed without malice in the course of an inherently dangerous

20   assaultive felony is not voluntary manslaughter. The majority in *Bryant* did not determine

21   whether such a killing was *involuntary* manslaughter. Justice Kennard's concurring opinion in

22   *Bryant* concluded that a killing committed without malice in the course of an assaultive felony that

23   is not one of the enumerated felonies for purposes of the felony murder rule can be involuntary

24   manslaughter. *Id.* at 971-974. On appeal, Young argued that the California Court of Appeal

25   should adopt the reasoning of Justice Kennard's concurring opinion in *Bryant*.

26   The California Court of Appeal determined that, even assuming that a killing without

27   malice in the course of an assaultive felony can be involuntary manslaughter, the instruction was

28   not warranted because there was no such assaultive felony here. The only assaultive felony

present in Young's case was one that, unlike the crime described by Justice Kennard in *Bryant*, involved malice.

> Assuming that Justice Kennard's concurrence properly states the law, defendant fails to identify what assaultive felony might form the basis of any such involuntary manslaughter instruction in this case.   Shooting into an occupied vehicle in violation of section 246 is, as defendant notes, an assaultive felony. (*People v. Chun, supra*, 45 Cal.4th at p. 1200.)  It cannot, however, be a predicate crime for purposes of involuntary manslaughter because section 246 requires that the shooter "maliciously and willfully" fire at an occupied vehicle.[4] Because it is not possible to commit a section 246 shooting without malice, the jury could not find defendant guilty of section 246 and base a conviction for involuntary manslaughter on that violation.[5] Absent a suggestion of any other assaultive felony, there was no error in the court's instructions on involuntary manslaughter.

> > [Footnote 4:  The jury was instructed pursuant to CALCRIM No. 965 in relevant part as follows: "The defendant is charged in count 6 with shooting at an occupied motor vehicle in violation of Penal Code section 246. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully and maliciously shot a firearm; [¶] AND [¶] 2. The defendant shot the firearm at an occupied motor vehicle; [¶] AND [¶] 3. The defendant did not act in self-defense or in defense of someone else. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to disturb, defraud, annoy, or injure someone else."

> > [Footnote 5:  Willfully shooting at an occupied car with the intent to commit a wrongful act or to disturb, annoy or injure someone necessarily establishes implied malice. (*See People v. Chun, supra*, 45 Cal.4th at p. 1205 ["'[A]ny juror who relied on the felony-murder rule necessarily found that defendant willfully shot at an occupied vehicle.... No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life–which is a valid theory of malice."].)

*Young*, at *2-3.

Interestingly, Young made no effort in his petition for review to the California Supreme Court or in his federal habeas petition to identify an assaultive felony that would have sufficed for involuntary manslaughter under Justice Kennard's analysis.   Young's failure to do so is particularly telling: when the state appellate court points out the specific deficiency that leads it to reject an argument, and the petitioner does not thereafter address that deficiency, he essentially concedes that he does not have the missing fact.

Young's federal due process claim based on the failure to instruct on involuntary manslaughter as a lesser-included offense fails because there is no clearly established federal rule that a trial court must instruct on all lesser-included and lesser-related offenses.   Although instructions on lesser-included offenses must be given in capital cases, *Beck v. Alabama*, 447 U.S. 625 (1980), "[t]here is no settled rule of law on whether *Beck* applies to noncapital cases such as the present one.   In fact, this circuit, without specifically addressing the issue of extending *Beck*, has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case." *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).   The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim.   *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1105-06 (9th Cir. 1998).

Young was charged with murder and the jury was instructed on murder.   Young had no due process right to instructions on a particular sort of involuntary manslaughter as a lesser-included offense, especially when that sort of involuntary manslaughter was not his defense theory.   In light of the absence of any Supreme Court holding that a non-capital defendant has a right to lesser-included offense instructions, the California Court of Appeal's rejection of the claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d).   Young is not entitled to the writ on this claim.

B.   Aiding And Abetting Jury Instructions

Young argues that the aiding-and-abetting instructions given at his trial were flawed because they permitted his "conviction as an aider and abettor without a finding that he had the 'specific intent' to aid and abet the 'target crime.'"   Docket No. 1-3 at 25.   He further contends, without elaboration, that this problem deprived him of his federal right to due process, citing *In re Winship*, 397 U.S. 358, 364 (1970).   Docket No. 1-3 at 25.

The jury instructions on aiding-and-abetting given at Young's trial provided, in relevant part:

> A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.
>
> A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.
>
> Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.
>
> To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> 1. The perpetrator committed the crime;
>
> 2. The defendant knew that the perpetrator intended to commit the crime;
>
> 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
> AND
>
> 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

CT 374-75 (CALCRIM 400, 401).

The California Court of the Appeal rejected Young's state and federal claims, finding that the jury was properly instructed on aiding and abetting liability. *Young*, at *3-4. The appellate court explained that, under California law, there must be "'proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating the commission of, the offense. . . . When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime, the aider and abettor must share the specific intent of the perpetrator.'" *Id.* at *3 (quoting *People v. Beeman*, 35 Cal. 3d 547, 560 (Cal. 1984)). The specific intent will be shared when the aider and abettor "'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission

of the crime.'" *Id.* (quoting *Beeman*, 35 Cal.3d at 560).  Using these principles, the California Court of Appeal found the instructions adequate in Young's case:

> Contrary to defendant's argument, the standard CALCRIM instructions given here on aiding and abetting accurately state the law. The instructions as a whole clearly and unmistakably require the jury to make a determination of defendant's mental state. In the words of the instructions, the jury was to determine whether defendant knew of the perpetrator's unlawful purpose and "specifically intend[ed] to, and [did] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." Accordingly, we find no error.

*Young*, at *4.

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  "'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)).  "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 436).  Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72 & n.4; *Boyde*, 494 U.S. at 380.  If a constitutional error is found in the jury instructions, the federal habeas court also must determine whether that error was harmless by looking at the actual impact of the error. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998).

The California Court of Appeal's rejection of Young's claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court. The California Court of Appeal determined that the instructions "accurately state the law." *Young*, at *4.  A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988).  Thus, this court's analysis begins with an acceptance that the instructions accurately stated California law.  Young has failed to show a reasonable likelihood that the jury understood the instruction to mean that the jury could

United States District Court
Northern District of California

9

United States District Court
Northern District of California

find him guilty on an aiding and abetting theory without finding the mental state required under California law for such liability.  Further, in light of Young's own testimony that, while riding in one car, he fired a gun from that car toward the other car travelling on the freeway, *see* RT 1013-1014, 1047, the jury almost certainly would not have needed to rely on the aiding-and-abetting instruction to find him guilty of the crime of shooting at an occupied motor vehicle.  "[I]t is not enough that there is some 'slight *possibility*' that the jury misapplied the instruction."  *Waddington v. Sarausad*, 555 U.S. at 191 (quoting *Weeks v. Angelone*, 528 U.S. 225, 236 (2000)).  Young has not shown that the jury instructions given failed to adequately instruct the jury about the intent necessary for aiding-and-abetting liability.  He is not entitled to the writ on this claim.

C.    Challenge to CALCRIM 402 Jury Instruction That Led To Enhanced Sentence

California Penal Code § 190(d) is a sentencing provision that adds an extra five years to the minimum base term for second-degree murder "if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury."  If the subsection applies, the second-degree murder conviction will result in a prison sentence of 20-years-to-life rather than the usual 15-years-to-life sentence.

Young's jury found the § 190(d) sentencing allegation true.  That is, the jury found true the allegation that "[t]he killing of Rhonda White was perpetrated by means of shooting a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict great bodily injury."  CT 438.

On appeal, Young contended that the enhanced sentenced under § 190(d) had to be set aside because the jury instructions were erroneous under state law.  Specifically, he contended that the CALCRIM 402 instruction used at his trial "failed to inform the jury it needed to decide whether murder by shooting from a vehicle with the specific intent to inflict great bodily injury, rather than merely 'murder,' was a natural and probable consequence of the target offense."  Docket No. 9-9 at 66; *see also* Docket No. 1 at 5.  In his federal petition for writ of habeas corpus, Young urges that the same state law error in the instructions violated his Sixth and Fourteenth

Amendment rights to have the jury determine all material issues.  Docket No. 1 at 5.[2]

The California Court of Appeal rejected Young's challenge to the jury instructions.

> Contrary to defendant's argument, the section 190, subdivision (d) enhancement does not require a finding of foreseeability. As noted above, section 190, subdivision (d) focuses on whether the killing occurred as the result of a drive-by shooting. Section 190, subdivision (d) requires the jury to find that at the time the shot was fired, either by defendant or Myers, defendant intended the shot to inflict great bodily injury on a person outside the vehicle. This is an entirely different question from whether murder is the reasonably foreseeable or natural and probable consequence of shooting at an occupied vehicle.

*Young*, at \*5.

As mentioned in the preceding section, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in

---

[2] The jury was instructed on the natural and probable consequences doctrine pursuant to CALCRIM No. 402 as follows: "The defendant is charged in Count 6 with Penal Code Section 246, 'shooting at a vehicle' and in Counts 1-5 with murder and attempted murder. [¶] You must first decide whether the defendant is guilty of Count 6. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of Counts 1-5. [¶] Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is guilty of murder and attempted murder, the People must prove that: [¶] 1. The defendant is guilty of shooting at an occupied motor vehicle; [¶] 2. During the commission of shooting at an occupied motor vehicle a coparticipant in that shooting at an occupied motor vehicle committed the crime of murder and attempted murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of murder and attempted murder was a natural and probable consequence of the commission of shooting at an occupied motor vehicle. [¶] A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator." CT 377 (CALCRIM 402).

The jury also was instructed on second-degree murder by shooting a firearm from a motor vehicle pursuant to CALCRIM No. 525:  "If you find the defendant guilty of second degree murder as charged in Count One, you must then decide whether the People have proved the additional allegation that the murder was committed by shooting a firearm from a motor vehicle. [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant and/or Aaron Myers killed a person by shooting a firearm from a motor vehicle; [¶] 2. The defendant and/or Aaron Myers intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. When the defendant and/or Aaron Myers shot a firearm, the defendant intended to inflict great bodily injury on the person outside the vehicle.[¶] ... The People must prove that the defendant intended that the person shot at suffer great bodily injury when he and/or Aaron Myers shot from the vehicle. However, the People do not have to prove that the defendant intended to injure the specific person who was actually killed. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."  CT 386 (CALCRIM No. 525).

United States District Court
Northern District of California

1    habeas corpus.  *See Bradshaw*, 546 U.S. at 76; *Hicks*, 485 U.S. at 629.  Thus, the starting point in

2    the analysis of Young's federal habeas challenge to the jury instructions is to accept that the law of

3    California is that the sentencing provision of California Penal Code § 190(d) may be imposed

4    without need for a finding of foreseeability.  That is, the jury need only find that, at the time the

5    shot was fired by one of the perpetrators, Young "intended the shot to inflict great bodily injury on

6    a person outside the vehicle."  *Young*, at *5; *see* CALCRIM 525.

7        Young's federal constitutional claim wholly depends on Young's version of state law

8    being correct.  But the California Court of Appeal rejected Young's interpretation of state law.

9    His federal constitutional claim fails with his state law claim.  That is, the instruction did not fail

10   to inform the jury of a necessary finding the jury had to make under state law in order for the

11   § 190(d) sentence enhancement to be imposed.  Young's federal habeas claim that his due process

12   right to have the jury determine all material issues fails because the instruction did not fail to

13   inform the jury of a necessary finding for the § 190(d) sentence enhancement.

14       Respondent argues that this constitutional claim is unexhausted but nonetheless should be

15   rejected on the merits.  The court agrees.  Prisoners in state custody who wish to challenge

16   collaterally in federal habeas proceedings either the fact or length of their confinement are

17   required first to exhaust state judicial remedies, either on direct appeal or through collateral

18   proceedings, by presenting the highest state court available with a fair opportunity to rule on the

19   merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c).

20   Here, the federal constitutional claim is unexhausted because Young did not present it to the

21   California Supreme Court.  He argued only the state law error in his petition for review in the

22   California Supreme Court.  *See* Docket No. 1-3 at 30-31.  A district court may deny, but not grant,

23   relief on a habeas petition that presents an unexhausted claim.  See 28 U.S.C. § 2254(b)(1).  The

24   district court can deny an unexhausted claim only when "it is perfectly clear that the applicant

25   does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir.

26   2005).  This court will deny relief on the unexhausted federal constitutional claim because the

27   claim is plainly meritless in that the state law issue on which it depends has been resolved against

28   Young.

United States District Court
Northern District of California

United States District Court
Northern District of California

D.      Double Jeopardy Claim

Young contends that his conviction for second-degree murder violates the Double Jeopardy Clause of the U.S. Constitution because his acquittal for first-degree murder necessarily resolved all of the elements in his favor.  Docket No. 1 at 5-6; Docket No. 1-4 at 9.  He also urges that the State was collaterally estopped from asserting against him the same theories of murder as those which his co-defendant, Aaron Myers, had been acquitted at his earlier trial.  Docket No. 1-4 at 12.  Young appears to contend that he could not be convicted of an offense greater than voluntary manslaughter because Aaron Myers had been convicted of voluntary manslaughter but acquitted of murder.

Young's double jeopardy and collateral estoppel claims were presented to the Contra Costa Superior Court in a petition for writ of habeas corpus.  The superior court rejected the claims in a reasoned decision.  *See* Docket No. 9-10 at 130-132.  The California Court of Appeal and the California Supreme Court summarily rejected the claims.

1.      Young's Acquittal of First-Degree Murder
        Did Not Bar His Conviction For Second-Degree Murder

Young argues that the jury's verdict acquitting him of first-degree murder barred a conviction for second-degree murder.  Young contends that the jury could not have convicted him of second-degree murder because there were common elements between the prosecution's first-degree and second-degree murder theories and the jury necessarily resolved those elements in his favor.

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The protections of the Double Jeopardy Clause apply to the States through the Fourteenth Amendment.  *See Benton v. Maryland*, 395 U.S. 784 (1969).  The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense.  *See Witte v. United States*, 515 U.S. 389, 395-96 (1995); *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980).

13

The Double Jeopardy Clause does not bar a conviction of a lesser-included offense at the same trial at which the defendant is acquitted of a greater offense. *See Williams v. Warden*, 422 F.3d 1006, 1010-12 (9th Cir. 2005). It has long been accepted practice for juries to acquit a criminal defendant of a charged offense but convict on a lesser-included offense. "At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). Although double jeopardy concerns may in some circumstances arise when a defendant is acquitted of the greater offense in one trial and then convicted of a lesser-included offense in a later trial, this case does not implicate these concerns because Young was not subjected to two trials. *Cf. Illinois v. Vitale*, 447 U.S. 410, 421 (1980) ("[A] person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense--an offense consisting solely of one or more of the elements of the crime for which he has already been convicted . . . the reverse is also true; a conviction on a lesser-included offense bars subsequent trial on the greater offense.").

Young's acquittal of first-degree murder and conviction of second-degree murder does not violate the Double Jeopardy Clause. The jury was instructed to find Young guilty of first-degree murder only if the prosecution proved all of the elements of first-degree murder. RT 1287-90. The jury's decision to acquit him of first-degree murder simply indicates that the prosecution failed to prove each and every element of either first-degree murder theory beyond a reasonable doubt. However, the converse does not necessarily apply -- the jury's acquittal on a particular charge did not mean that all of the elements were necessarily decided in Young's favor. Since the prosecution needed to prove all of the elements in conjunction, its failure to sufficiently prove just one element would have resulted in an acquittal for first-degree murder.

Young cannot obtain federal habeas relief on his claim because there is no "clearly established Federal law, as determined by the Supreme Court of the United States," establishing that a conviction on a lesser-included offense at a trial at which the jury acquitted the defendant of a greater offense violates his constitutional rights against double jeopardy. *See* 28 U.S.C. §

2254(d)(1).  In such circumstances, the state court's rejection of his claim cannot be said to be contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court.  *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006); *see, e.g., id.* at 76-77 (given the lack of holdings from the Supreme Court and the wide divergence of the lower courts on the issue of the potentially prejudicial effect of spectators' courtroom conduct, the state court's determination that the petitioner was not inherently prejudiced by spectators wearing buttons depicting the murder victim was not contrary to or an unreasonable application of clearly established Supreme Court law); *Varghese v. Uribe*, 736 F.3d 817, 824 (9th Cir. 2013) (because there is no Supreme Court authority that squarely addresses petitioner's claim – that a criminal defendant's rights to counsel and due process are violated when the state court conditions his access to, and testing of, the prosecution's limited evidence on the disclosure of the test results to the prosecution – the state appellate court had no specific rule to apply, so its decision was not an unreasonable application of clearly established Supreme Court precedent).

### 2.      Nonmutual Collateral Estoppel

Young next contends that the prosecution was collaterally estopped from asserting against him the same theories of murder that were used to prosecute Aaron Myers because Myers was acquitted of murder.  This is so, reasons Young, because the issues presented in Myers' trial were identical to the issues litigated in his own trial, Myers' trial resulted in a final judgment on the merits, and the prosecution was a party to that prior proceeding.  Docket No. 1-4 at 12.  Young appears to contend that he could not be convicted of a more serious offense than Myers was convicted of, and Myers was only convicted of voluntary manslaughter.  *Id.* at 9-18.

The Fifth Amendment's protection against double jeopardy includes the concept of collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436, 445 (1970). Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.  *Id.* at 443.  *Ashe* did not deal with *nonmutual* collateral estoppel, however.

United States District Court
Northern District of California

The Supreme Court has squarely held that the doctrine of nonmutual collateral estoppel does not apply to criminal cases.  In *Standefer v. United States*, the petitioner was charged and convicted of aiding and abetting, despite the fact that the principal had already been acquitted of the same crimes.  447 U.S. 10, 11-13 (1980).  In rejecting the argument that the acquittal of the principal barred the prosecution of the defendant, the Supreme Court held that "application of nonmutual estoppel would be plainly unwarranted" in light of the considerations unique to criminal law.  *Id.* at 23.  Those unique considerations include the lack of appellate review, limitations on prosecutorial discovery, and exclusionary rules.  *Id.* at 22-24.  Additionally, the government has a significant interest in the enforcement of criminal law, which makes the situation different from the interests protected in civil litigation and militated against the application of nonmutual collateral estoppel in criminal cases.  *Id.* at 25.  The *Standefer* Court concluded that "[t]his case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute.  That is one of the consequences we accept under our jury system.'"  *Id.* at 25 (quoting *Roth v. United States*, 354 U.S. 476, 492 n.30 (1957).)  Not only did *Standefer* reject nonmutual collateral estoppel against the government in a criminal case, a footnote suggests that the issue did not even rise to the level of a constitutional concern.  *See id.* at 22 n.16 ("Nothing in the Double Jeopardy Clause or the Due Process Clause forecloses putting petitioner on trial as an aider and abettor simply because another jury has determined that his principal was not guilty of the offenses charged.  *Cf. Ashe v. Swenson*, 397 U.S. 436 (1970).").  *See also United States v. Dotterweich*, 320 U.S. 277, 278-79 (1943) (rejecting an employee's argument that he could not be convicted when his corporate employer was acquitted of the same crimes); *id.* at 279 ("Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries").

The Contra Costa County Superior Court reasonably determined that Myers' verdict did not require that Young's conviction be set aside.  The Superior Court relied on *People v. Superior Court (Sparks)*, 48 Cal. 4th 1 (2010), which had cited *Standefer* and two related California cases in

holding that nonmutual collateral estoppel does not apply to verdicts in criminal cases and that "a verdict regarding one defendant has no effect on the trial of a different defendant." *Sparks*, 48 Cal.4th at 5. As to Young's argument, the Superior Court determined:

> [I]t is entirely possible that each jury made a finding as to the culpability of the specific defendant before them without reference to the liability for the acts of the other defendant. But even if the verdicts somehow reflected vicarious liability or aiding and abetting liability in some sense, the fact that the verdicts may be viewed as logically inconsistent does not affect their validity.

Docket No. 9-10 at 130-32.

The federal cases that Young relies upon are distinguishable. Young cited *Ashe v. Swenson*, which concerned an individual who was being prosecuted for the robbery of one of six victims, despite having been acquitted in an earlier trial of robbing another one of the other victims due to insufficient evidence. 397 U.S. 436, 437-39 (1970). The Supreme Court concluded that, because the acquittal from the first trial established that there was reasonable doubt as to whether the petitioner was one of the robbers, the State was barred under the Double Jeopardy Clause from re-litigating that same issue against the petitioner, even though the second case concerned another victim from the same robbery. *Id.* at 446-47. Young also relied on *Wilson v. Belleque*, which involved an individual who already had been tried twice for aggravated and intentional murder, and sought to prevent the state from retrying him a third time on three charges of the lesser-included offense of felony murder arising out of the same incident. 554 F.3d 816, 819-20 (9th Cir. 2009). After his prior murder convictions were reversed, the petitioner was retried and acquitted of the greater offenses of aggravated murder and intentional murder, but convicted on the lesser-included offenses of attempted aggravated assault and attempted murder. *Id.* The jury was unable to reach a verdict on three counts of aggravated murder and did not consider the lesser-included offenses of felony murder, on account of the trial court's instruction that the jury could not consider any of the lesser-included offenses until it concluded that petitioner was acquitted of the charged offense. *Id.* at 820. The Ninth Circuit determined that the petitioner's subsequent prosecution for felony murder did not violate the Double Jeopardy Clause because he had been acquitted of intentional murder, which was not the same offense as felony

murder and did not determine the issue of ultimate fact, namely whether the victim's death was caused as a result of a statutorily enumerated felony that the petitioner participated in. *Id.* at 828-830.

Both *Ashe* and *Wilson* involve the same petitioner 'running the gauntlet' and being prosecuted multiple times for different charges arising out a single incident. *See Ashe*, 397 U.S. at 437-40; *Wilson*, 554 F.3d at 819-21. In other words, both cases are concerned with the application of mutual collateral estoppel, where the same individual was subjected to prosecution multiple times for the same charges or similar offenses involving the same issues of ultimate fact. Neither case provides support for Young's claims of nonmutual collateral estoppel, as *Ashe* and *Wilson* do not address the issue of whether the prosecution is allowed to assert certain murder theories that have already been asserted against a co-defendant; and neither case addresses the issue of inconsistent verdicts between different co-defendants.

The Contra Costa County Superior Court's rejection of Young's double jeopardy claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Young has not identified any U.S. Supreme Court holding that an acquittal of a greater offense bars the conviction of a lesser-included offense at the same trial. And the Supreme Court has held that nonmutual collateral estoppel, such as Young wishes to use from the Aaron Myers verdict, does not apply in criminal cases. *See Standefer*, 447 U.S. at 23. Young therefore is not entitled the writ on his double jeopardy claims.

E.   <u>Ineffective Assistance of Appellate Counsel Claim</u>

Finally, Young contends that appellate counsel was ineffective for failing to raise the Double Jeopardy and related collateral estoppel arguments on direct appeal. Docket No. 1-4 at 10. He presented this claim in his state habeas petitions.

The superior court rejected the claim in a short, but reasoned decision. The superior court noted that the California Supreme Court's opinion in *Sparks* already had rejected the double jeopardy and collateral estoppel arguments that were being asserted in Young's habeas petition. Docket No. 9-10 at 132. The superior court reasoned that, since the state's highest court had

"definitively decided these issues adversely" to Young's position, appellate counsel was not ineffective "for failing to raise claims that were foreclosed by clear and conclusive precedent." *Id.*

The Sixth Amendment guarantees not only assistance, but the effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must satisfy a two-prong test. First, he must establish that counsel's performance was deficient. *Id.* at 687. A deficient performance is one that falls below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance; he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

*Strickland* also applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must first show that appellate counsel was objectively unreasonable in failing to find nonfrivolous issues to raise on appeal. *Id.* The petitioner must then demonstrate that he was prejudiced by such conduct and show a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Id.* Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). When, as here, § 2254(d) applies, the question "is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

United States District Court
Northern District of California

As discussed in the foregoing section, the U.S. Supreme Court has not held that the Double Jeopardy Clause prohibits the conviction of a lesser-included offense in the same trial in which a defendant is acquitted of a greater offense and the Supreme Court has rejected the use of the doctrine of nonmutual collateral estoppel in criminal cases.  Young has not identified any lower federal court cases adopting his view of double jeopardy.  And the California Supreme Court definitively had rejected the double jeopardy arguments being asserted by Young.  It follows, then, that appellate counsel was not ineffective in not presenting these arguments on appeal.  In other words, appellate counsel had no duty to present on appeal an issue that had no chance of succeeding.  *See Moorman v. Ryan*, 628 F.3d 1102, 1106-07 (9th Cir. 2010) (if trial counsel's performance was not objectively unreasonable or did not prejudice the petitioner, then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and the petitioner was not prejudiced by appellate counsel's omission).

The superior court's rejection of Young's ineffective assistance of counsel claim on the merits was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The superior court reasonably determined that appellate counsel was not ineffective in declining to raise a meritless issue on direct appeal.  Young is not entitled to habeas relief on this claim.

F.      No Certificate of Appealability

A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:   January 24, 2017

_____

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

21